E-FILED
Tuesday, 29 September, 2026 10:35:07 AM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

KIMBERLY WILLIAMS,
Plaintiff,

v.

THE CARLE FOUNDATION,
Defendant.

Case No. 1:24-cv-01421-JEH-RLH

**Order**

Now before the Court is the Defendant's Motion for Summary Judgment.[1] (D. 34). For the reasons set forth *infra*, the Defendant's Motion for Summary Judgment is GRANTED.

**I**

The Plaintiff, Kimberly Williams (Plaintiff or Plaintiff Williams), commenced this action on October 28, 2024, against the Defendant, The Carle Foundation (Defendant or Defendant Carle). (D. 1). The Plaintiff filed her First Amended Complaint on January 17, 2025, against the Defendant, alleging one Count of violating 42 U.S.C. § 1981 "Race-Based Discrimination" and alleging three Counts of violating Title VII, including "Race-Based Discrimination," "Race-Based Harassment," and "Retaliation." (D. 13 at ECF pp. 1–12). On June 20, 2025, the Defendant filed its Answer (D. 21). On May 29, 2026, the Defendant filed a Motion for Summary Judgment. (D. 34). On August 12, 2026, the Plaintiff responded, and on August 26, 2026, the Defendant replied. (D. 39; D. 42). The matter is now fully briefed.

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

## II

This case centers on the Plaintiff's allegations of race-based discrimination, followed by retaliation, and resulting in working conditions so intolerable that she was constructively discharged while working for the Defendant. The Plaintiff is an African American woman who worked for the Defendant from October 2010, until she quit on August 22, 2024. From 2019 until she quit, the Plaintiff worked as a sleep assistant. (D. 34 at ECF p. 2; D. 39 at ECF p. 2). While working as a sleep assistant, the Plaintiff shared an office with Julia Fischer ("Fischer"); their relationship was friendly at first. (D. 39 at ECF pp. 2–3).

Sometime between February and June 2024, the Plaintiff mentioned taking her African boyfriend to an NBA game, and Fischer responded in a mocking manner, "Ha ha ha, he's going to be like the prince that comes to America."[2] The Plaintiff understood this comment to be racially derogatory. The Plaintiff told Fischer to stop. Fischer repeated the remark. The Plaintiff told Fischer, "Don't say that again", and Fischer responded, "Oh." The Plaintiff and Fischer no longer spoke after this exchange. *Id.* at ECF pp. 3–4.[3]

In May 2024, the Plaintiff's hair was braided with extensions. Fischer was on FaceTime in the shared office, and the Plaintiff was visible in the camera's background. Fischer began singing, "Bald-headed scallywag, ain't got no hair in the back . . . gelled up and weave it." The Plaintiff alleges that Fischer sang the lyrics mocking the Plaintiff's freshly braided hair. *Id.* at ECF pp. 4–5.

---

[2] The Plaintiff knew Fischer was referencing the film "Coming to America" starring Eddie Murphy.

[3] The Plaintiff and the Defendant dispute various details, including some details of this exchange. The Court describes the Plaintiff's version, not because the Court is finding the facts in the Plaintiff's favor, but because the Court ultimately agrees with the Defendant that the Plaintiff failed to present a genuine dispute as to any material fact, even when construing the facts in the Plaintiff's favor. Accordingly, the Court describes the evidence in the Plaintiff's favor to demonstrate that the Defendant is entitled to judgment as a matter of law.

The Plaintiff emailed her manager about the FaceTime incident and was instructed to tell Fischer the incident made her uncomfortable and request that Fischer not do it again. The manager offered to step in if Fischer did not respect the Plaintiff's request. The Plaintiff then declined a meeting with the manager and supervisor. The Plaintiff ultimately discussed the incident with HR. During this time, the Plaintiff observed Fischer going into the supervisor's office. The Plaintiff suspected that Fischer was going to the supervisor to complain about the Plaintiff, though the Plaintiff was not sure. When Fischer would return from the supervisor's office, she acted immature by talking on the phone saying, "Ha, ha, ha, I won again." (D. 34 at ECF pp. 4–5).[4] Management ultimately told both Fischer and the Plaintiff not to FaceTime in the office anymore. (D. 39 at ECF p. 7).

The supervisor was aware that the Plaintiff had a bad astigmatism and always kept her office dim. One day Fischer complained to the supervisor about the lights, so the supervisor entered the office, said "it is too dark in here . . . everything needs to be turned up and on", and turned on the lights and raised the shades. Two weeks later, the Plaintiff complained to the supervisor that a glare was hurting her eyes and asked to lower the shades. The supervisor offered the Plaintiff an empty office upstairs to use where she could control the lighting. The Plaintiff refused the new office saying she did not want to temporarily move all her things upstairs, explaining she was only asking for a one-day accommodation. (D. 39 at ECF pp. 5–6). The Plaintiff clarified that the glare was only an issue for that one day. (D. 34 at ECF p. 9; D. 39 at ECF p. 2). Subsequently, the supervisor

[4] This section comes from the Defendant's MSJ, Undisputed Material Facts 9–14. The Plaintiff fails to address the Defendant's Undisputed Material Facts 9–14, so the Court assumes the facts to be true. *See* Civil LR.7.1(D)(2)(b)(6) ("A failure to respond to any numbered fact will be deemed an admission of the fact."); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923–24 (7th Cir. 1994) (holding the District Court could strictly enforce local rule governing nonmovant's response to summary judgment motion despite movant's failure to object to nonmovant's noncompliance with rule).

reached out to the Plaintiff offering three potential accommodations: (1) moving to a vacant office on another floor, (2) ordering anti-glare screen protectors for her monitors, or (3) moving her workstation away from the windows. The Plaintiff was only concerned with the shades, which her supervisor lowered. The Plaintiff emailed her supervisor thanking him for resolving the glare concern. (D. 34 at ECF p. 6).[5]

On June 5, 2024, the Plaintiff received a "General Housekeeping Items" email from the manager saying:

> Kim, I will be sending out an e-mail in the next couple of days about general housekeeping for the department, such as lights needing to be on, no loud music, you can wear earbuds, no FaceTiming at your desk, et cetera . . . I'm hoping once we roll these housekeeping rules out and hold people accountable, this will help. If you have any questions or suggestions, please let me know.

(D. 39 at ECF p. 6). This email came after Fischer complained about the Plaintiff playing loud music in their shared office. The Plaintiff does not recall receiving department-wide communication and does not know if Fischer received similar correspondence. *Id.* The music issue was resolved by both the Plaintiff and Fischer using earbuds. *Id.* at ECF p. 7.

After obtaining a higher-paying position in Kentucky, the Plaintiff quit working for the Defendant. Her last day was August 22, 2024. When the Plaintiff resigned, she knew Fischer had previously resigned, and if the Plaintiff remained at Carle Health, she would no longer work with Fischer. *Id.* at ECF p. 3.

[5] This last section with the (D. 34 at ECF p. 6) citation comes from the Defendant's MSJ, Undisputed Fact 18. The Plaintiff fails to address the Defendant's Undisputed Fact 18, so the Court assumes the fact to be true. *See* Civil LR.7.1(D)(2)(b)(6) ("A failure to respond to any numbered fact will be deemed an admission of the fact."); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923–24 (7th Cir. 1994) (holding the District Court could strictly enforce local rule governing nonmovant's response to summary judgment motion despite movant's failure to object to nonmovant's noncompliance with rule).

**III**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323–24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). A scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250. Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**IV**

The Defendant seeks summary judgment on all four Counts arguing, even when viewing the facts in the Plaintiff's favor, the Plaintiff failed to present a

genuine dispute as to any material fact for trial, and the Defendant is entitled to judgment as a matter of law.

**A**

The Defendant starts with Count III, the Title VII Race-Based Hostile Work Environment claim. To prevail, a plaintiff must prove the following elements: "(1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe or pervasive so as to alter the conditions of her work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Jones v. Das*, 164 F.4th 1024, 1032 (7th Cir. 2026) (citing *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016)). The Defendant argues that the Plaintiff failed to present a genuine dispute as to any material fact regarding the second, third, and fourth elements. (D. 34 at ECF p. 14). The Court focuses its analysis on the third element.

The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Jones*, 164 F.4th at 1033 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). In assessing whether the harassment was severe or pervasive, the Court considers "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim." *Jones*, 164 F.4th at 1032–33.

"When determining whether the harassment was so severe or pervasive, we employ both an objective and a subjective test. *EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024). The objective test is whether "a reasonable person" would find the environment hostile, and the subjective test is whether the victim perceives that the environment is hostile. *Harris v. Forklift Sys. Inc.*, 510 U.S.

17, 17 (1993). Whether the harassment "was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). However, if a reasonable jury could not find that the conduct was severe or pervasive, then the claim may be disposed at summary judgment. *Id.*; *see EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387 (7th Cir. 2024). Because the standard is severe *or* pervasive, not severe *and* pervasive, "a sufficiently severe episode may occur as rarely as once . . . while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002). The Court considers "the totality of the circumstances when determining whether conduct is severe or pervasive." *Jones*, 164 F.4th at 1032 (citing *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1116 (7th Cir. 2022)).

The Plaintiff argues that a rational jury could find the Defendant's cumulative conduct to be sufficiently severe or pervasive. When referring to the Defendant's "cumulative conduct," the Plaintiff alleges the following instances: Fischer's race-based remarks, Fischer's targeted ridicule of Plaintiff's hairstyle, the retaliatory changes to working conditions, asymmetric enforcement of the rules, and the Defendant's failure to meaningfully investigate. (D. 39 at ECF pp. 23–25).

The Defendant argues that these instances, even when viewed in culmination and in the Plaintiff's favor, do not present a disputed material fact for a jury, and the Defendant is entitled to judgment as a matter of law. Specifically, the Defendant makes three arguments explaining why the Plaintiff has no evidence to establish the severe-or-pervasive standard: (1) an insufficient investigation is not harassment, (2) the Plaintiff failed to present sufficient evidence of *severe* race-based harassment, and (3) the Plaintiff failed to present sufficient evidence of *pervasive* race-based harassment. (D. 34 at ECF pp. 18–24; D. 42 at ECF pp. 10–13).

**1**

First, the Defendant argues that an insufficient investigation is not harassment. (D. 42 at ECF pp. 10–13). The Plaintiff does not identify authority to support her position to the contrary. (D. 39 at ECF pp. 24–25). This Court agrees with the Defendant.

*Lapka v. Chertoff* is particularly instructive here. 517 F.3d 974 (7th Cir. 2008). In *Lapka*, the plaintiff made "a single hostile environment claim composed of a series of events . . . [and] her legal claim is for the cumulative effect of those events." *Id.* at 981. The plaintiff's single claim included an assault, a failure to investigate, and a subsequent visit of her assaulter. *Id.* When the Seventh Circuit considered whether the harassment was severe or pervasive, the third element of the hostile environment claim, it only considered the claim of assault and the subsequent visit, not the claim of an insufficient investigation. *Id.* at 982–984. The Seventh Circuit, however, considered the insufficient investigation when considering whether there was a basis for employer liability, the fourth element of the hostile environment claim. Evidence of an insufficient investigation goes toward whether there is a basis for employer liability (the fourth element), not whether the harassment is severe or pervasive (the third element). *Id.* at 981–84; *see Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957 (7th Cir. 2024).

Consistent with the Seventh Circuit's approach, a sister district held that an "[i]nsufficient investigation into a grievance does not rise to the level of an incident offensive enough to qualify as harassment, much less actionable harassment 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Butler v. Chic. Transit Auth.*, No. 13 c 5276, 2014 WL 3939654, at *7 (N.D. Ill. Aug. 12, 2014) (quoting *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005)); *see also Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1305 (11th Cir. 2023) (finding that even where the plaintiff's supervisors

"disbelieved or ignored her complaints of race discrimination," the district court did not err in granting summary judgment on the plaintiff's hostile work environment claim). This Court agrees that evidence of an insufficient investigation should not be considered as part of the cumulative conduct that could lead a rational jury to find severe or pervasive harassment.

**2**

Next, the Defendant argues that the Plaintiff failed to present sufficient evidence of severe race-based harassment. The Defendant walks through each of the Plaintiff's allegations explaining why it falls below the standard for severe harassment.[6] This Court agrees with the Defendant.

**a**

The Defendant starts with the alleged race-based remarks and ridicule of Plaintiff's hairstyle, which is the "Coming to America" remark and the FaceTime incident. The Defendant argues these allegations cannot meet the standard of severe harassment because the Seventh Circuit has found far more serious conduct to be insufficient as a matter of law. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) ("[E]mployers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace."); *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 638, 641 (7th Cir. 2001) (holding co-worker's three verbal utterances—that interracial relationships were disgusting, blacks did not want to be caught in a particular area because of lynching, and plaintiff better get along with him if she wanted to keep

[6] Note, the Plaintiff alleges, "A rational jury could find the cumulative conduct, including the race-based remarks, targeted ridicule of Plaintiff's hairstyle, retaliatory changes to working conditions, asymmetric enforcement of office rules, and Defendant's failure to meaningfully investigate, sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment." It seems like the Plaintiff is conceding that the alleged instances of harassment are not severe but rather the cumulative conduct is sufficiently pervasive to meet the standard. Construing the arguments in the Plaintiff's favor, however, the Court still considers whether the alleged harassment is severe.

her job—did not rise to the level of objectively hostile work environment). For example, in *Village at Hamilton Pointe*, the Seventh Circuit found that the co-worker harassment—a racial slur, racially insensitive comments, and a racial hair incident involving touching—was not severe enough to support a hostile work environment claim. *EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 418–19 (7th Cir. 2024).

Plaintiff Williams's allegations are strikingly similar, but less severe, than the harassment in *Hamilton Pointe*. In *Hamilton Pointe*, the co-worker said and repeated the N-word, while here, Fischer said and repeated the "Coming to America" remark. In *Hamilton Pointe*, the co-worker made racial comments and inappropriately touched the plaintiff's hair, while here, Fischer sang a song targeting and ridiculing the Plaintiff's hair. The Plaintiff's harassment is less severe than the *Hamilton Pointe* harassment because Plaintiff Williams was not subject to racial slurs or physical touching. Both the plaintiffs were subject to harassment by a co-worker, which the Seventh Circuit has consistently held is much less serious than a supervisor's harassment. *Gates v. Bd. of Educ.*, 916 F.3d 631, 638 (7th Cir. 2019); *see Robinson v. Perales*, 894 F.3d 818, 828–29 (7th Cir. 2018). The Seventh Circuit in *Hamilton Pointe* noted that while the harassment was "inappropriate in the workplace", these incidents "are not sufficient to constitute severe harassment." *Vill. at Hamilton Pointe LLC*, 102 F.4th at 419. The Defendant is correct that, as a matter of law, the "Coming to America" remark and the FaceTime incident also cannot meet the "severe" standard.

**b**

The Defendant similarly argues that the Plaintiff's allegations of retaliatory changes to working conditions and asymmetric enforcement of the rules, as a matter of law, are not severe harassment. For the retaliatory changes, the Plaintiff refers to management's raising of the shades and turning on the lights, which

reversed the longstanding dim-office arrangement. For asymmetric enforcement, the Plaintiff alleges that she was the only employee to receive an email about the office rules despite both the Plaintiff and Fischer breaking the rules (i.e., listening to music without headphones and FaceTiming at work). (D. 39 at ECF p. 24).

The Defendant argues that no trier of fact could conclude that the supervisor taking Fischer's side of the lighting dispute by opening the shades and turning on the lights is severe retaliatory conduct. (D. 42 at ECF p. 12). The Defendant is correct. A manager requiring the lights to be on in a shared office is not severe harassment. Additionally, the manager offering the Plaintiff her own space to work where she can control the lights is not harassment; it is an accommodation.

The Defendant also argues that the email about the office policy was not asymmetric enforcement or severe harassment. It is undisputed that the policies in the email applied to everyone in the office. It is also undisputed that Fischer complained of the Plaintiff violating the office policy by playing music without headphones in their shared office. The Defendant did not harass the Plaintiff by emailing her the office policy after receiving a complaint that the Plaintiff was violating the policy. *See Jones*, 164 F.4th at 1033 (affirming summary judgment for the employer holding "that no rational jury could find that [the employer's] reminder [of the office policy] rose to the level of harassment."). Moreover, the Defendant also enforced the rules against Fischer when the manager said FaceTiming was not allowed in the office after Fischer's FaceTime incident.

While subjectively the Plaintiff perceived her environment to be hostile after management raised the shades, turned on the lights, and emailed the office's general policies, a reasonable person would not. No trier of fact would characterize the reversal of an unofficial dim-light policy and the sending of an office policy email as severe harassment.

**c**

Finally, the Defendant notes that the Plaintiff failed to present evidence that the alleged harassment altered the conditions of her work environment by creating a hostile situation. In evaluating the severity of the alleged conduct, the court considers "whether it unreasonably interferes with an employee's work performance." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559 (7th Cir. 2004) (citing *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001)). As a result of the "Coming to America" remark and the FaceTime incident, the Plaintiff alleges that Fischer and the Plaintiff no longer spoke and Defendant Carle ceased normal communication with the Plaintiff. (D. 39 at ECF pp. 23–24). The Plaintiff does not allege that the lack of communication interfered with the Plaintiff's ability to perform her work as a sleep assistant.

Regarding the lighting incident, the Plaintiff insists that the glare on the screen was only a one-day problem. (D. 39 at ECF pp. 5–6). Because the problem was temporary, it could not have unreasonably interfered with the Plaintiff's work performance. To the extent the glare interfered with the Plaintiff's work on that particular day, the Plaintiff was given three accommodations, making any interference the Plaintiff experienced not unreasonable. Finally, the Plaintiff does not allege that the office policy email unreasonably interfered with her ability to work. The Defendant correctly concludes that the Plaintiff cannot prove that she suffered severe harassment altering the conditions of her work environment by creating a hostile situation.

In conclusion, a rational jury could not find that the Defendant's cumulative conduct constitutes harassment so severe as to alter the conditions of the Plaintiff's work environment by creating a hostile situation.

**3**

Finally, the Defendant argues that the Plaintiff failed to present sufficient evidence of pervasive race-based harassment. Specifically, the Defendant argues, and the Plaintiff disagrees, that no rational juror could find the Plaintiff's alleged harassment—the "Coming to America" remark, the FaceTime incident, the reversal of the dim-light policy, and the email with the office rules—to be pervasive harassment over the course of the Plaintiff's nearly 14 years of employment with the Defendant. The Defendant also notes that the instances involving Fischer independently fall below the standard of "pervasive harassment" given the 20 months the Plaintiff and Fischer worked together.

"[N]o bright-line rule and no magic number of slurs" exist to qualify pervasive harassment creating a hostile work environment. *Jones*, 164 F.4th at 1037. For example, in *Pierce*, seven race-related incidents over ten years did not rise to the level of an objectively hostile work environment. *Pierce v. Ill. Dep't of Hum. Servs.*, 355 F.App'x. 28, 31–32 (7th Cir. 2009). While some of the race-related incidents were "deplorable," like a co-worker flashing a Ku Klux Klan sign and another co-worker calling the plaintiff the N-word, "isolated incidents like these involving other co-workers do not rise to the level of environments [the Seventh Circuit] ha[s] deemed hostile." *Id.* at 31.

If we consider "pervasive harassment" like the Seventh Circuit in *Pierce* and measure the quantity of harassment compared to Plaintiff Williams's length of employment with the Defendant, no rational juror could find that Plaintiff Williams's alleged harassment was pervasive. *See Pierce*, 355 F.App'x. at 29, 31–32. The plaintiff in *Pierce* worked for the defendant for about ten years. *Id.* at 29. Here, Plaintiff Williams worked for the Defendant for about fourteen years. The plaintiff in *Pierce* endured seven race-related incidents during his employment. *Id.* at 31. Here, by contrast, the Plaintiff alleges four instances of harassment. It is worth

noting that the harassment faced by the plaintiff in *Pierce* was not only higher in quantity over a shorter period of time but also more severe. *See id.* at 31–32. If the harassment in *Pierce* was not pervasive, as a matter of law, the Plaintiff's alleged harassment, though inappropriate, was not pervasive.

Even if we measure "pervasive harassment" using the amount of time that Fischer and the Plaintiff worked together—20 months—the harassment still fails to meet the "pervasive" standard as a matter of law. In *King*, the Seventh Circuit explained that when the alleged harassment is not severe, "a few incidents at the rate of one every four to six months . . . cannot be called pervasive." *King v. Acosta Sales and Marketing, Inc.*, 678 F.3d 470, 472 (7th Cir. 2012). As discussed above, the Plaintiff's alleged harassment, while inappropriate, is not severe as a matter of law (the harassment was not physical, came from a co-worker, did not include racial slurs). The Plaintiff alleges four instances of harassment[7] in the 20 months that the Plaintiff worked with Fischer, averaging an incident every five months. If one incident every four to six months is not pervasive, then as a matter of law, the Plaintiff's incident every five months (on average) cannot meet the pervasive standard. A rational jury could not find that the Defendant's cumulative conduct constitutes pervasive harassment.

Because the Plaintiff's evidence does not meet the standard of severe harassment altering the conditions of her work environment and creating a hostile environment, the Defendant is entitled to summary judgment on Count III, the Plaintiff's Race-Based Hostile Work Environment claim.

**B**

The Defendant argues it is similarly entitled to judgment as a matter of law on Plaintiff's Section 1981 and Title VII Race-Based Discrimination claims, Counts

---

[7] The Plaintiff effectively alleges four instances of harassment: the "Coming to America" remark, the FaceTime incident, the dim-light policy reversal, and the office policy email.

I and II respectively, because the Plaintiff failed to present a genuine dispute as to any material fact to meet the standard for constructive termination. (D. 34 at ECF pp. 26–31). Both Section 1981 and Title VII guarantee equal rights to all citizens regardless of race and prohibit race-based discrimination in the workplace. 42 U.S.C. § 1981(a); 42 U.S.C. § 2000e-2(a)(1). To defeat a motion for summary judgment, the plaintiff "must produce evidence that would let a reasonable factfinder find that her race caused an adverse employment action." *Paterakos v. City of Chi.*, 147 F.4th 787, 795 (7th Cir. 2025). Here, in Counts I and II, the Plaintiff alleges that she suffered an adverse employment action in the form of constructive termination.

A plaintiff establishes constructive discharge by showing her working conditions became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). This is a high bar to meet. *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639–40 (7th Cir. 2009). The Seventh Circuit recognizes two forms of constructive discharge: (1) conditions "even more egregious than that required for a hostile work environment," or (2) a situation "when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (internal citations omitted).

Here, the Plaintiff does not allege that the Defendant led her to believe, by action or speech, that she would be terminated. The Plaintiff only argues that she was constructively discharged by conditions even more egregious than the high standard for a hostile work environment. (D. 39 at ECF pp. 26–27). As discussed above, the Plaintiff failed to meet the standard for a hostile work environment, so the Plaintiff certainly cannot meet the elevated standard to prove constructive discharge.

Additionally, as a practical matter, the Plaintiff's argument that she was constructively discharged fails because Fischer quit before the Plaintiff quit, meaning the Plaintiff knew she would no longer have to work with her harasser when she quit. No reasonable juror would find that the Plaintiff was constructively discharged due to race-based harassment because the Plaintiff's harasser no longer worked with the Plaintiff. The Defendant, therefore, is entitled to summary judgment on Counts I and II.

**C**

Finally, the Defendant argues it is entitled to judgment as a matter of law on the Plaintiff's Count IV Retaliation claim because the Plaintiff failed to present a genuine dispute as to any material fact for a jury. (D. 34 at ECF pp. 31–36; D. 42 at ECF pp. 17–20). "Title VII prohibits an employer from retaliating against an employee 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Lesiv v. Ill. Cent. R.R.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)). To prove retaliation, a plaintiff must prove: "(1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv*, 39 F.4th at 911 (citing *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)). Here, the Court focuses on the Defendant's argument that the Plaintiff failed to allege evidence to satisfy the second element, that she suffered an adverse employment action.

The Plaintiff alleges three instances of adverse employment actions: (1) the reversal of the dim-light office policy, (2) the office policy email, and (3) her supervisor's shunning of the Plaintiff. (D. 39 at ECF pp. 29–30).[8] The Defendant

[8] While not addressed by the Plaintiff in her Memorandum in Opposition, the Defendant's Motion for Summary Judgment addresses the argument that the Plaintiff's alleged constructive discharge is an adverse employment action. The Court agrees that a constructive discharge can qualify as an adverse employment action. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1043 (7th Cir. 2023). However, as this Court

counters that each allegation, as a matter of law, falls below the standard of an adverse employment action (D. 42 at ECF pp. 17–20).

A materially adverse action is "an action 'that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'" *Lesiv*, 39 F.4th at 911–12 (citing *Poullard v. McDonald*, 829 F.3d 844, 852 (7th Cir. 2016)). The actions must "rise above 'trivial harms,' such as 'petty slights or minor annoyances that often take place at work and that all employees experience,' which do not qualify as materially adverse." *Lesiv*, 39 F.4th at 903 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Bell v. E.P.A*, 232 F.3d 546, 555 (7th Cir. 2000). "The test is whether the conduct alleged as retaliation would be likely to deter a reasonable employee from complaining about discrimination." *Nair v. Nicholson*, 464 F.3d 766, 768–69 (7th Cir. 2006).

**1**

First, the Defendant argues that Fischer reporting the lighting-level disagreement and the supervisor turning the lights to full illumination does not constitute an adverse employment action. (D. 42 at ECF p. 18). Specifically, the Defendant argues that this behavior falls squarely within "petty slights or minor annoyances that often take place at work and that all employees experience" which does not rise to the level of retaliatory conduct that would likely deter a person from engaging in protected activity in the future. (D. 42 at ECF p.18) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In *Cantu*, the plaintiff alleged that his employer impermissibly retaliated against the plaintiff for filing an EEOC complaint by ignoring the plaintiff's

discussed above, the Plaintiff has not pleaded facts sufficient to meet the hostile work environment standard, let alone the constructive discharge standard.

complaints about the "bright lights" in his cubicle, among other complaints. *Cantu v. Ventura Foods, LLC*, No. 19-CV-1003, 2021 WL 1222103, at *7 (E.D. Wis. Apr. 1, 2021). The plaintiff alleged that the bright lights caused him stress due to his recent health problems. *Id.* The court found that "such stress does not transform ordinary frustrations" into an actionable claim. *Id.*

Here, the Plaintiff similarly complained to management about the bright lights after a supervisor turned up the lights following Fischer's complaint about the lighting. Unlike the employee in *Cantu*, the Plaintiff's supervisor ultimately offered the Plaintiff an accommodation: to move to a vacant office on a different floor. The manager also offered to rearrange the office furniture or add a glare shield to the monitor. (D. 39 at ECF p. 6). If the bright lights in *Cantu*, which the employer ignored and failed to resolve, were "ordinary frustrations" rather than an "actionable claim", then the bright lights here certainly do not rise to the level of an actionable claim. No. 19-CV-1003, 2021 WL 1222103, at *7. An office supervisor, after all, may control office conditions like lighting. *See Hale v. Vill. of Madison*, 493 F. Supp. 2d 928, 939 (N.D. Ohio 2007) (finding that an office supervisor may control the office temperature, and a reasonable person would not have been dissuaded from invoking Title VII protections because he maintained an uncomfortably cold office temperature).

The Court agrees with the Defendant: the reversal of the dim-lighting policy cannot be an actionable employment action because no reasonable jury would find that turning on the lights and opening the shades would "deter a reasonable employee from complaining about discrimination." *Nair*, 464 F.3d at 768–69. Fischer complaining to management about the lighting, even if done with retaliatory motives, is nothing more than a petty slight. Management siding with Fischer and turning on the lights is at most a minor annoyance. Management, after

all, can control the illumination in the office. Consequently, the lighting dispute does not meet the standard of an adverse employment action.

**2**

The Defendant similarly argues that the general housekeeping email was not a materially adverse employment action. (D. 42 at ECP p. 18). Specifically, the Defendant argues that the email was not selective enforcement of the rules and referenced existing rules. *See Johnson v. Chi. Bd. of Educ.*, No. 05 C 4294, 2007 WL 317030, at *7 (N.D. Ill. Jan. 31, 2007) (holding that reminding Plaintiff of existing rules is not selective enforcement or retaliation and is at most a minor annoyance).

Management did not selectively enforce the office policies against the Plaintiff in sending the email. Rather, management sent the email *after* the Plaintiff complained to management about the FaceTime incident and Fischer complained to management about the Plaintiff playing music without headphones in a shared office (both the FaceTime and the music were violations of the office policy). The Plaintiff argues that because management sent this email directly to the Plaintiff, and because the Plaintiff is unsure if Fischer received a similar email, the enforcement was asymmetric. Assuming the email was only sent to the Plaintiff, the email is still not asymmetric enforcement. The Plaintiff concedes that management told both Fischer and the Plaintiff not to FaceTime in the office anymore. (D. 39 at ECF p. 7). Consequently, the rules were enforced against both the Plaintiff and Fischer (the only two people in the office). An email reminding the Plaintiff of the office policy after the Plaintiff broke the office policy, while annoying, is not an adverse employment action.

**3**

Finally, the Defendant argues that the Plaintiff's allegations of her underlying discrimination complaint going uninvestigated do not constitute an adverse employment action. (D. 42 at ECF p. 17). The Plaintiff argues that the

supervisor failing to investigate and shunning an employee is precisely the kind of workplace changes that a reasonable jury could find would dissuade an employee from complaining. (D. 39 at ECF p. 30).[9]

As a preliminary matter, the Plaintiff's claim that management shunned her is not supported by the Plaintiff's own version of events. As discussed above, the Plaintiff was not shunned by management following the two alleged race-based incidents. When viewing the facts in the Plaintiff's favor, the Plaintiff turned down a meeting with her supervisor and manager to discuss the incident, emailed with the manager about the incident, and spoke with HR. Additionally, the Plaintiff agrees that the manager entered the Plaintiff and Fischer's office and said FaceTiming in the office was not allowed. Plaintiff also was not shunned after the reversal of the dim-light policy. While the supervisor originally "sided with Fischer" (note, this Court finds it reasonable for management to require the lights be on in a shared office after an employee complains), the supervisor ultimately offered three solutions to accommodate the Plaintiff and settled on closing the shades, which was the Plaintiff's idea and satisfied her.

Even if the Plaintiff was shunned, isolation and ostracization by colleagues, while sad and unfortunate, does not rise to the level of an adverse employment action. The law in the Seventh Circuit is clear that shunning and ostracizing a

---

[9] The Plaintiff says in her Memo in Opposition, "The . . . shunning of an employee [is] precisely the kind[] of workplace changes that a reasonable jury could find would dissuade an employee from complaining", and the Plaintiff cites to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Plaintiff's proposition is not supported by this source. To the contrary, this pincite says, "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience . . . The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms . . . And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Note also, the Plaintiff did not elaborate on "shunning of an employee." For the Plaintiff's benefit, the Court walks through instances in the record that the Plaintiff may have been referencing. Ultimately, even when viewing the facts in the Plaintiff's favor, the Plaintiff's allegations do note rise above "petty slights or minor annoyances" and certainly do not meet the standard for adverse employment actions.

colleague is not an adverse employment action. *Parkins v. Civ. Const. of Ill., Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998).

If the Plaintiff is arguing that management's insufficient investigation was an adverse employment action, that argument also fails. The Plaintiff's argument would ultimately be a circular argument: the Defendant retaliated against the Plaintiff's report of discrimination by not sufficiently investigating the Plaintiff's report of discrimination. While the Seventh Circuit has not squarely addressed this issue,[10] when the Seventh Circuit considers allegations of an insufficient investigation, the Seventh Circuit does not consider those facts in the adverse-employment-action analysis. *See Lapka*, 517 F.3d at 981, 985–986.

One district in the Seventh Circuit has explicitly held that an insufficient investigation is not an adverse employment action for the purpose of a retaliation claim. *See Rosa v. Bd. of Trs. of Univ. of Ill.*, No. 18-CV-8477, 2020 WL 7319574, at *11 (N.D. Ill. Dec. 11, 2020) ("[N]either the Board's failure to take remedial measures nor its inadequate investigation are materially adverse actions on which a Title VII retaliation claim may rest . . . these actions would not deter a reasonable employee from filing a complaint of discrimination."); *see also Lopez v. Vill. Disc. Outlet Inc.*, No. 23 C 16201, 2024 WL 3688709, at *4 n.5 (N.D. Ill. Aug. 6, 2024). Similarly, a court in this district held, "An employer's failure to investigate or resolve a claim to an employee's satisfaction is not an adverse action." *Curtis v. W. Ill. Univ.*, No. 3:17-cv-03179-SLD-JEH, 2019 WL 13280240, at *5 (C.D. Ill. Mar. 21, 2019). Additionally, at least two Circuit Courts have also held an insufficient

[10] The Seventh Circuit has addressed a similar, but different, issue. In *Hobbs*, the failure to investigate an allegation that occurs *after* the statutorily protected behavior can be considered an adverse employment action. *Hobbs v. City of Chi.*, 573 F.3d 454, 464 (7th Cir. 2009). Specifically, the plaintiff experienced harassment, filed an EEOC charge, *then* experienced subsequent harassment that was never investigated. This failure to investigate could plausibly qualify as an adverse employment action. *Id.* By contrast, Plaintiff Williams experienced harassment, complained to management, and claims that management did not sufficiently investigate those claims.

investigation is not an adverse employment action. *See Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025) ("[A]n employer's failure to investigate an internal discrimination complaint cannot support a retaliation claim absent a showing of demonstrable harm."); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."). This Court agrees, an insufficient investigation is not an adverse employment action for a retaliation claim.

In conclusion, a rational jury could not find that the Plaintiff suffered an adverse employment action. Consequently, the Plaintiff failed to present a genuine dispute as to any material fact, and the Defendant is entitled to summary judgment on Count IV, the Plaintiff's Retaliation claim.

**V**

For the reasons set forth *supra*, the Court finds the Defendant is entitled to judgment as a matter of law on all four Counts. Therefore, the Court GRANTS the Defendant's Motion for Summary Judgment (D. 34). The Clerk is directed to enter judgment in favor of the Defendants and close this case.

*It is so ordered.*

Entered on September 28, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE